UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANIEL LEMASTER,

        Plaintiff,

v.

        Case No. 2:11-CV-549
        JUDGE EDMUND A. SARGUS, JR.
        MAGISTRATE JUDGE NORAH McCANN KING

ANCHOR HOCKING LLC, et al.,

        Defendants.

## OPINION & ORDER

This matter is before the Court on Defendant Anchor Hocking LLC's Partial Motion to Dismiss (Doc. 7). For the reasons that follow, the Defendant's motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Daniel Lemaster ("Lemaster") brings this action against his former employer, Anchor Hocking LLC ("Anchor"),[1] and the labor union he formerly belonged to, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local Union #25 ("USW" or "Union"), for violations of the Labor Management Relations Act ("LMRA") and the National Labor Relations Act ("NLRA"), as well as claims for retaliatory discharge, civil conspiracy, and intentional infliction of emotional distress. (Compl. ¶¶ 10, 13.) During his employment with Anchor, the terms and conditions of Lemaster's employment were governed by a collective bargaining agreement ("CBA") between Anchor and the USW. (*Id.* ¶ 15.) As is relevant to this lawsuit, the CBA set forth the procedures

---

[1] Defendant Anchor Hocking LLC is made up of numerous organizations that Lemaster has listed as defendants to this action: Anchor Hocking CG Operating Company LLC, Anchor Hocking Consumer Glass Corporation, and Anchor Hocking Operating Company LLC.

and guidelines to be followed by Anchor and the USW in the event of disputes, including a Union member's termination. (*Id.*)

In September 2009, Lemaster made complaints to Anchor's human resources department concerning pay inequities, seniority issues, overtime issues, and allegedly threatening conduct he had experienced from fellow employee Michael Sims ("Sims"). (*Id.* ¶ 16.) According to the complaint, Lemaster later made an additional complaint concerning further threatening conduct from Sims. (*Id.* ¶ 17.)

Lemaster's complaints generated an investigation concerning the conduct of Sims. (*Id.* ¶ 18.) During the ensuing investigation, Lemaster's coworkers indicated that they had witnessed Lemaster engage in harassing behavior. Because of this alleged behavior, Anchor held a termination hearing on October 9, 2009, wherein Lemaster was terminated. (*Id.* ¶ 21.) USW filed a grievance on Lemaster's behalf pursuant to the terms of the CBA, and an arbitration hearing took place on April 29, 2010. (*Id.* ¶¶ 22, 24.) The arbitration decision was rendered on February 10, 2011, wherein the grievance was sustained in part and denied in part. (*Id.* ¶ 26.) The decision directed Anchor to offer Lemaster reinstatement to another position based on seniority without backpay. (*Id.* ¶ 28.) Lemaster alleges that in contravention of the decision requiring reinstatement based on seniority, Anchor offered Lemaster an entry-level position in a different department at approximately half of the salary than he previously made. (*Id.* ¶ 29.)

Lemaster filed this action on June 22, 2011 against Anchor and the USW, alleging violations of the LMRA, the NLRA, and claims of retaliatory discharge, civil conspiracy, and intentional infliction of emotional distress. Anchor then filed this motion for partial dismissal of Lemaster's retaliatory discharge, civil conspiracy, and intentional infliction of emotional distress claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of a claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

## III. DISCUSSION

Anchor moves for partial dismissal of the following claims: (1) retaliatory and/or wrongful discharge (Count III); (2) civil conspiracy (Count IV); and (3) intentional infliction of emotional distress (Count V).

### A. Retaliatory and/or Wrongful Discharge (Count III)

Anchor first moves to dismiss Lemaster's retaliatory and/or wrongful discharge claim. Lemaster alleges that he was discharged "in retaliation for making certain complaints to [Anchor's] human resources department," and that these "alleged facts constitute the State of Ohio claim of retaliatory and/or wrongful discharge in violation of public policy." (Compl. ¶¶

3

55–56.) In his brief in opposition, Lemaster refashions this claim as one for retaliatory discharge pursuant to Ohio's whistleblower statute, Ohio Revised Code § 4113.52. The Court will address both claims: (1) wrongful discharge in violation of public policy; and (2) retaliatory discharge under Ohio's whistleblower statute.

### 1. Wrongful Discharge in Violation of Public Policy

While Ohio recognizes a common law claim for wrongful discharge in derogation of public policy, it does so only for at-will employees. *Haynes v. Zoological Soc. of Cincinnati*, 652 N.E.2d 948, 951 (Ohio 1995) ("in order for an employee to bring a cause of action pursuant to *Greeley*, . . . that employee must have been an employee at will.") Because the *Haynes* plaintiff's employment was governed by a collective bargaining agreement that "specifically limited the power of the [employer] to terminate" her, the Ohio Supreme Court held that the agreement "took her outside the context of employment at will," and thus "outside the class of employees for whom *Greeley* provides protection."[2] *Id.*

The Sixth Circuit and this Court has consistently relied upon *Haynes* to dismiss public policy wrongful discharge claims brought by former union members, such as Lemaster. *See, e.g., Klepsky v. United Parcel Serv.*, 489 F.3d 264, 271 (6th Cir. 2007) ("[B]ecause Klepsky is not an at-will employee, we affirm the district court's dismissal of Klepsky's [public policy] claim pursuant to *Haynes*."); *Williams v. United Steel Workers of Am.*, No. 1:09-cv-743, 2010 WL 909883, at *6 (S.D. Ohio Mar. 10, 2010) ("Williams cannot hold Steelcraft liable for wrongful discharge in violation of public policy because he is a member of a union whose employment was governed by a collective bargaining agreement.").

---

[2] The Ohio Supreme Court created the public policy wrongful discharge cause of action for at-will employees in *Greeley v. Miami Valley Maint.*, 551 N.E.2d 981 (1990). The *Greeley* court held that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Id.* (para. 1 of syllabus).

4

Lemaster's complaint clearly states that the CBA set forth "the relevant terms and conditions of [his] employment, in particular the termination procedures and guidelines." (Compl. ¶ 15.) Because Lemaster was the member of a union whose employment was governed by a collective bargaining agreement, Lemaster cannot bring a claim for wrongful discharge in violation of public policy. Accordingly, the Court dismisses Lemaster's public policy wrongful discharge claim.

### 2. Retaliatory Discharge under Ohio's Whistleblower Statute

Although Count III of Lemaster's complaint explicitly states that it is setting forth "the State of Ohio claim of retaliatory and/or wrongful discharge in violation of public policy," in his opposition brief, Lemaster refashions his claim as one for retaliatory discharge in violation of Ohio's Whistleblower statute. (Compl. ¶ 55; Doc. 11, at 4.) Anchor has not moved to dismiss any such claim. Indeed, the Court concludes that a fair reading of Count III would interpret such claim to be one for wrongful discharge in violation of public policy, and not for retaliatory discharge in violation of Ohio's whistleblower statute. Moreover, no other portion of Lemaster's complaint can be fairly read to set forth a retaliatory discharge claim under Ohio's whistleblower statute. There is not a single reference to the word "whistleblower" or to Ohio Revised Code § 4113.52 anywhere in Lemaster's complaint. Under such circumstances, the Court can only conclude that Lemaster is attempting to raise such a claim for the first time in his brief opposing the motion to dismiss. This Lemaster cannot do. *See Shuttlesworth v. Hous. Opportunities Made Equal*, 873 F. Supp. 1069, 1081–82 (S.D. Ohio 1994) ("[W]e draw the line at allowing Plaintiff to employ [his opposing memorandum] to *introduce* claims not even intimated at in his pleading." (emphasis in original)). Anchor need not move to dismiss a claim that has never been

5

properly raised, and Lemaster cannot raise a claim by insisting that his allegations support a cause of action that is not readily apparent from the face of his pleading.

Even if the Court were to determine that Lemaster has properly pleaded a claim for retaliatory discharge under Ohio's whistleblower statute, Lemaster's claim falls outside of the statute of limitations. Under Ohio's whistleblower statute, "[i]f an employer takes any disciplinary or retaliatory action against an employee as a result of the employee's having filed a report under division (A) of this section, the employee may bring a civil action . . . within one hundred eighty days after the date the disciplinary or retaliatory action was taken." Ohio Rev. Code § 4113.52(D). Lemaster premises his whistleblower claim on his discharge from Anchor, which occurred on October 9, 2009. (Compl. ¶ 21.) Lemaster did not file his complaint until June 22, 2011, well past the 180-day statute of limitations period. Accordingly, the Court dismisses Count III of Lemaster's complaint.

## B. Civil Conspiracy (Count IV)

Anchor also moves to dismiss Lemaster's civil conspiracy claim, contending that Lemaster's civil conspiracy claim is preempted by the LMRA, or alternatively, Lemaster has failed to allege sufficient facts to support a claim for civil conspiracy.

Section 301 of the LMRA preempts state law claims whose resolution requires an interpretation of the terms of a collective bargaining agreement. 29 U.S.C. § 185(a). Section 301 provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

6

29 U.S.C. § 185(a); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220–21 (1984) (holding that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law."); *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) ("[T]he Supreme Court 'has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement.'" (quoting *Smolark v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc))).

The Sixth Circuit has adopted a two-step inquiry to determine whether a state law claim is sufficiently independent to survive § 301 preemption. *Mattis*, 355 F.3d at 906. First, the Court must determine whether resolving the state law claim would require interpretation of the terms of the collective bargaining agreement. *Id.* If so, the claim is preempted. If not, then the Court must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. *Id.* If the rights were created by the collective bargaining agreement, the claim is preempted. *Id.* In short, if a state law claim fails either of these two requirements, it is preempted by § 301.

To prevail on a claim of civil conspiracy, the plaintiff must establish: "(1) a malicious combination; (2) involving two or more persons; (3) injury to persons or property; and (4) the existence of an unlawful act independent from the actual conspiracy." *Aetna Cas. and Sur. Co. v. Leahey Cons. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (quoting *Univ. Coach, Inc. v. New York City Trans. Auth. Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)). Lemaster alleges that Anchor and the USW "committed an overt act of coercing fraudulent representations concerning Plaintiff in pursuance of the common purpose of unlawfully terminating [him] from his position."

7

(Compl. ¶ 60.) In order for the Court to determine whether the alleged "common purpose" of the alleged conspiracy was unlawful, however, the Court must interpret the CBA's termination provisions, which set out the parties' legal rights and obligations throughout the termination procedure. Indeed, Lemaster explicitly states in his complaint that, "[u]pon information and belief, the [USW] and [Anchor] conspired together *in order to deprive [Lemaster of] his rights under the CBA.*" (Compl. ¶ 43 (emphasis added).) Thus, determining whether Lemaster's termination was unlawful would require the Court to examine the CBA. Accordingly, the Court concludes that Count IV is preempted by § 301 and thereby dismissed.

### C. Intentional Infliction of Emotional Distress (Count V)

Anchor also moves to dismiss Lemaster's intentional infliction of emotional distress ("IIED") claim, contending that it is preempted by § 301. To prevail on an IIED claim, the plaintiff must establish: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Mattis*, 355 F.3d at 908. Lemaster alleges that "[t]he course of conduct perpetrated against Plaintiff . . . was specifically intended and had the effect of causing emotional distress to Plaintiff" and that such conduct was "known, intentional, malicious, and rises to the level of outrageous conduct." (Comp. ¶¶ 63–64.) Specifically, Lemaster claims that his alleged distress was caused when Anchor "coerced other employees to make fraudulent statements concerning Plaintiff in order to terminate him." (Doc. 11, at 7.) Thus, Lemaster's termination is the basis of his IIED claim.

Determining whether this alleged conduct was "extreme and outrageous," however, would require the Court to interpret the CBA. *See Mattis*, 355 F.3d at 908 ("[A] defendant has not acted outrageously where he has done no more than to insist upon his legal rights in a permissible way." (quoting *DeCoe v. Gen. Motors. Corp.*, 32 F.3d 212, 219 (6th Cir. 1994))).

8

Without reference to the CBA, the Court could not possibly know whether Anchor's conduct, its relationship with Lemaster, and Lemaster's termination was "extreme and outrageous." Lemaster's allegations involve Anchor's ensuing investigation, Anchor's termination of Lemaster, and the resulting arbitration—all of which are governed by the terms of the CBA. If Anchor pursued their right to discharge Lemaster under the CBA, Anchor's conduct cannot be said to be outrageous; if Anchor's conduct went beyond mere enforcement of its rights under the CBA, then its conduct may be outrageous. In order to resolve this issue, the Court must refer to the CBA. Thus, the Court concludes that Count V is preempted by § 301 and thereby dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant Anchor Hocking LLC's Motion for Partial Dismissal (Doc. 7) is **GRANTED**. **Count III** of the Plaintiff's Complaint is **DISMISSED** in its entirety. **Counts IV and V** of the Plaintiff's Complaint are **DISMISSED as to Defendant Anchor Hocking LLC only**.

IT IS SO ORDERED.

8-6-2012
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE